# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**WINERD "LES" JENKINS,**

    Plaintiff,

v.                                                              **CIVIL ACTION NO.: 3:21-CV-78 (GROH)**

**CHASSIDY KINSER, individually,
DEPUTY S. ROBINSON, individually,
DEPUTY A. WEIDMAN, individually,**

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEPUTY S. ROBINSON AND DEPUTY A. WEIDMAN'S MOTION TO DISMISS

Currently pending before the Court is Deputy S. Robinson and Deputy A. Weidman's Motion to Dismiss for failure to state a claim upon which relief can be granted. ECF No. 10. The Deputies aver the Plaintiff fails to state a claim under 42 U.S.C. § 1983. In the alternative, they aver that they are entitled to qualified immunity because the Plaintiff fails to state a claim of violation of clearly established law. The matter has been fully briefed and is ripe for adjudication. For the reasons stated below, the Deputies' motion shall be **GRANTED**.

## I. BACKGROUND

This case arises out of Plaintiff Winerd "Les" Jenkins' arrest on April 23, 2020. See ECF No. 1. The Plaintiff is the owner and operator of Les' Place Traditional Barbershop, located in Inwood, West Virginia. Id. ¶ 10. On the date of the incident, the

1

Plaintiff was arrested in his barbershop for Obstructing an Officer, in violation of West Virginia Code § 61-5-17(a), for his refusal to comply with Governor Jim Justice's executive order, issued on March 20, 2020, which mandated the closure of barbershops to the general public ("EO 6-20").[1] The background of the Plaintiff's alleged unlawful arrest are as follows[2]:

On the morning of April 23, 2020, Defendant Chassidy Kinser, an inspector for the West Virginia Board of Barbers and Cosmetologists ("BBC"), arrived at the Plaintiff's barbershop to investigate a complaint that the Plaintiff was operating his barbershop in defiance of EO 6-20. ECF No. 1 ¶ 17. When Ms. Kinser arrived, the Plaintiff was inside the barbershop, but its door was locked. Id. The Plaintiff told Defendant Kinser that the barbershop was not open, but he admitted that it had been open the previous day. Id. The Plaintiff refused to comply with Ms. Kinser's request to close, stating that he would only close the barbershop if she could "provide him with signed documentation that he was required to close." Id. ¶ 18. At this point, Ms. Kinser returned to her car and called law enforcement. Id. ¶ 19.

Deputies Robinson and Weidman of the Berkeley County Sheriff's Department (collectively, the "Deputies") were dispatched to the barbershop to respond to Ms. Kinser's call. Id. ¶ 20. After talking to Ms. Kinser outside of the barbershop, the Deputies entered and ordered the Plaintiff to close. Id. ¶¶ 20–22. The Plaintiff told the

---

[1] EO 6-20 states, "effective as of 12:00 AM, Eastern Standard Time, on the Twentieth day of March, Two Thousand Twenty, all barbershops, nail salons, and hair salons throughout the 55 counties of this state shall not allow occupancy by the general public." See W. Va. Exec. Order No. 6-20 (Mar. 20, 2020).

[2] When reviewing a motion to dismiss, the Court must assume that the Plaintiff's "well-pleaded factual allegations" are true. Accordingly, the Court recites the facts as alleged in the Plaintiff's Complaint.

Deputies that he would close if Ms. Kinser gave him the order in writing and signed it. Id. ¶ 23.

The Deputies waited inside the barbershop with the Plaintiff while Ms. Kinser obtained a hard-copy version of the executive order. Id. ¶ 28. However, Ms. Kinser refused to sign the order. Id. The Plaintiff refused to acknowledge the document as sufficient, and at that point, the Deputies arrested the Plaintiff for Obstructing an Officer. Id. ¶ 29. The charges were later dismissed on January 7, 2021, after the Magistrate Court of Berkeley County found that EO 6-20 was unconstitutionally vague. Id. ¶ 33.

On May 20, 2021, the Plaintiff filed suit pursuant to 42 U.S.C. § 1983. ECF No. 1. The Complaint alleges three counts: (1) unreasonable search and seizure for the entry and investigative detention inside the barbershop, (2) unreasonable search and seizure for the Plaintiff's alleged false arrest, and (3) First Amendment retaliation for arresting the Plaintiff following the assertion of his rights to contest their authority.

On June 28, 2021, the Deputies filed the instant motion and an accompanying memorandum of law. ECF Nos. 10 & 11. The Deputies aver that the Plaintiff has failed to state a claim for a constitutional violation. In the alternative, the Deputies aver that they are entitled to qualified immunity against the Plaintiff's claims. The Plaintiff filed a Response on July 9, 2021. ECF No. 15. The Deputies filed a Reply on July 19, 2021. ECF No. 16.

## II. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure

12(b)(6) allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the pleading standard under Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a motion to dismiss, the Court assumes that the complaint's well-pleaded allegations are true, resolves all doubts and inferences in favor of the plaintiff and views the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. The Court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) (stating that in deciding a motion to dismiss, the court

4

may consider any document that is a matter of public record).

The doctrine of qualified immunity serves to protect government officials from civil liability so long as the offending official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity serves to balance "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The legal question of whether a defendant is entitled to qualified immunity must be decided by the court, not the jury. Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005). Therefore, "[u]nless a plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009).

### III. DISCUSSION

The Deputies argue that the Plaintiff has not alleged sufficient facts to state a claim for unlawful search and seizure of his barbershop, unlawful seizure for his arrest, or retaliatory arrest. In the alternative, the Deputies aver they are entitled to qualified immunity against all the Plaintiff's claims. The Court considers the Deputies' arguments in turn.

**A. Count I – Unlawful Search and Seizure**

The Plaintiff claims that the Deputies' entry into his barbershop constituted an

unlawful search, and their continued presence inside the barbershop during the incident constitutes an unlawful seizure,[3] in violation of the Fourth Amendment. The Fourth Amendment guarantees that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Amendment protects persons against unreasonable searches of "their persons [and] houses," but may also extend to other areas where a person may have a legitimate expectation of privacy. Minnesota v. Carter, 525 U.S. 83, 88 (2001) (citing Katz v. United States, 389 U.S. 347, 351 (1967)).

### 1. Unlawful Search

An unlawful search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." Maryland v. Macon, 472 U.S. 463, 469 (1985) (quoting United States v. Jacobsen, 466 U.S. 109 U.S. 109, 113 (1984)). In their motion, the Deputies argue that the Plaintiff had a diminished expectation of privacy in his barbershop because (1) it was a commercial business that was open to the public, and (2) it was a closely regulated business.

Property used for commercial purposes is treated differently for Fourth Amendment purposes from residential property. Carter, 525 U.S. at 90. "An expectation of privacy in commercial premises . . . is different from, and indeed less than,

---

[3] The Plaintiff also alleges that his time spent after his arrest until he was able to post bond constitutes a seizure. See ECF No. 1 ¶ 34; ECF No. 15 at 9. However, as discussed in the next section, the Plaintiff's arrest was lawful. Accordingly, the Court considers whether the Plaintiff's time spent inside the barbershop with the Deputies prior to his arrest constitutes a seizure.

a similar expectation in an individual's home." New York v. Burger, 482 U.S. 691, 700 (1987). Thus, a person "do[es] not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business." Macon, 472 U.S. at 469; see, e.g., Abilene Retail #30, Inc. v. Bd. of Comm'rs, 492 F.3d 1164, 1179 (10th Cir. 2007) ("There is no barrier to officers entering any retail establishment during normal business hours to view those areas of the premises open to the public."). Further, for closely regulated industries that have been subject to "a history of government oversight," there is "no reasonable expectation of privacy . . . [that] could exist for a proprietor over the stock of such an enterprise." Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978).

The Court need not discuss whether the barbershop was a closely regulated business because it finds that at the time the Deputies entered the barbershop, a reasonable officer would have believed that it was a commercial business open to the general public. When the Deputies arrived at the shop, a sign posted on the front door of the barbershop indicated that it was open on Thursdays from 8:30 a.m. to 5:00 p.m. See ECF No. 10-2 at 1. As seen in the Deputies' body camera footage, the barber poll outside of the shop was spinning when they arrived, suggesting that the shop was open for business.[4] Although the Plaintiff alleges that the front door was locked, the body camera footage shows that the Deputies entered the barbershop unimpeded. Significantly, the Plaintiff never told the Deputies that the barbershop was closed.

---

[4] The Court takes judicial notice of the Deputies' body camera footage, which the Plaintiff references in his Complaint. See ECF No. 1 ¶ 20 n.8. The body camera footage is publicly available on Plaintiff's counsel's blog at www.youtube.com/watch?v=AjmB4Rm0PUw.

Indeed, by repeatedly stating that he would close if provided a written copy of the order, he implied that the barbershop was open. Accordingly, the Court finds that a warrant was not required for the Deputies to enter the barbershop, and thus, the Plaintiff's claim for unlawful search of his barbershop fails to state a claim.

### 2. Unlawful Seizure

In determining whether a person is "seized" under the Fourth Amendment, courts consider "whether a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter." United States v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual . . . in another public place [and] putting questions to him if the person is willing to listen." Florida v. Royer, 460 U.S. 491, 497 (1983).

Here, the Court finds that the Plaintiff was not unlawfully seized in the barbershop prior to the arrest. The Deputies approached the Plaintiff in a public place in order to ask him to close his barbershop. At that time, there was no indication that the Plaintiff could not terminate the interaction. The Plaintiff asserts that he was immediately seized when the "uniformed law enforcement officers" engaged in an "overt show of authority" by entering his barbershop. ECF No. 15 at 9. However, the Plaintiff fails to allege exactly how the Deputies engaged in an overt act of authority. As the Supreme Court stated in Royer, "the fact that [an] officer identifies himself as a police officer, without more, [does not] convert the encounter into a seizure." 460 U.S. at 497.

The Plaintiff asserts that he was not free to leave after the Deputies ordered him to close his barbershop "or else be arrested," and he refused. ECF No. 15 at 10.

Certainly, it was reasonable for him to feel that way. However, as discussed in the section below, once the Plaintiff refused to comply with the Deputies' orders to close his barbershop, the Deputies had probable cause to "seize" the Plaintiff for obstruction. Thus, the operative time for the Plaintiff's unlawful seizure claim is when the Deputies entered the barbershop, and the Court finds that the Plaintiff was not seized during that time under Royer. Accordingly, the Court finds that the Plaintiff has not stated a claim for unlawful seizure prior to his arrest.

### B. Count II – Unlawful Arrest

The Plaintiff claims that he was unlawfully arrested in violation of the Fourth Amendment because the Deputies did not have a warrant, and there was no probable cause. The Fourth Amendment's right against unreasonable searches and seizures also protects a person for false or unlawful arrest, or arrest without legal process. See Wallace v. Kato, 549 U.S. 384, 389 (2007). In order to demonstrate unlawful arrest, "a plaintiff must show that he was arrested without probable cause." Smith v. Murphy, 634 F. App'x 914, 917 (4th Cir. 2015) (citing Brown v. Gilmore, 278 F.3d 362, 367–68 (4th Cir. 2002)). Probable cause is a totality-of-the-circumstances analysis, Illinois v. Gates, 462 U.S. 213, 241 (1983), that requires the Court to consider whether the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man [to] believ[e] that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

The Plaintiff argues that his arrest was unlawful because he was not obstructing or hindering the Deputies, "forcibly or otherwise," when he "questioned their authority."

ECF No. 15 at 18.  However, the Plaintiff was not arrested for obstructing the Deputies by questioning their authority.  The Plaintiff obstructed the Deputies by refusing to comply with their repeated commands to close his barbershop.  West Virginia case law states that "forcible or illegal conduct that interferes with an officer's discharge of official duties" is obstructing an officer.  State v. Davis, 229 W. Va. 695, 698, 735 S.E.2d 570, 573 (2012) (quoting State v. Carney, 222 W. Va. 152, 157, 663 S.E.2d 606, 611 (2008)).  West Virginia courts have also held that refusal to follow an officer's lawful order issued to effectuate a law enforcement function can constitute obstruction.  See City of St. Albans v. Botkins, 228 W. Va. 393, 402, 719 S.E.2d 863 (2011) (stating, "once [the plaintiff] refused to comply, a reasonable officer may have believed the refusal to be an attempt to obstruct the officer from performing an investigation to determine whether any criminal activity was involved").  Accordingly, the Court finds that the Deputies had probable cause to arrest the Plaintiff for obstruction because he was refusing to follow their lawful order, which constitutes obstruction under West Virginia law.  See W. Va. Code § 61-5-16 (stating that it is a law enforcement officer's task to "execute or enforce . . . any lawful order or proclamation of the governor of the state").

The fact that the Plaintiff's obstruction charge was later dismissed does not support the Plaintiff's contention that "[n]o reasonable officer would have believed that probable cause existed for the Plaintiff's warrantless arrest on April 23, 2020."  ECF No. 15 at 18.  Here, the Deputies were enforcing the governor's facially valid executive order, which at the time, was untested in the courts.  The Plaintiff refused to comply with the Deputies' orders to close the barbershop, which gave rise to probable cause for obstruction.

Because there was probable cause for the Plaintiff's arrest, the Deputies did not need an arrest warrant. Thus, the Plaintiff's arrest did not violate the Fourth Amendment, and his second claim fails.

### C. Count III – First Amendment Retaliation

The Plaintiff claims that his arrest was done in retaliation for challenging the executive order's authority and questioning the Deputies. Specifically, the Plaintiff avers that he was "exercising his protected free speech . . . and attempting to assert his legal rights" when he questioned the Deputies, and this was the "sole, motivating factor in the retaliatory actions of arresting the Plaintiff and forcibly closing his barbershop." ECF No. 15 at 21.

Because the Plaintiff is arguing that he was arrested in retaliation for exercising his First Amendment free speech rights, he must "plead and prove the absence of probable cause for the arrest." Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019). However, as discussed in the section above, the Deputies had probable cause to arrest the Plaintiff for obstruction because he was refusing to comply with their lawful orders. Accordingly, the Court finds that the Plaintiff has failed to state a retaliatory arrest claim.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds that the Plaintiff has failed to state a claim of a violation of his constitutional rights. Accordingly, Deputy S. Robinson and Deputy A. Weidman's Motion to Dismiss is **GRANTED**. ECF No. 10. The Plaintiff's claims against Deputy S. Robinson and Deputy A. Weidman are **DISMISSED WITH PREJUDICE**. The Plaintiff's claims against Defendant Chassidy Kinser shall proceed.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED:** September 15, 2021

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE